## CARSON v. UNITED STATES.
### No. 2761.

United States District Court, D. Maryland.
March 10, 1950.

Albert Avnet, Baltimore, Md., I. Duke Avnet, Baltimore, Md., for Carson.

Bernard J. Flynn, U. S. Atty., Baltimore, Md., C. Ross McKenrick, Asst. U. S. Atty., Baltimore, Md., Onan A. Hydrick, Atty. Dept. of Justice, Washington, D. C., for the United States.

CHESNUT, District Judge.

This case is brought under the Suits in Admiralty Act, 46 U.S.C.A. § 742, and the Act of Congress of April 11, 1942, known as the Amendment of War Risk Insurance Act, 46 U.S.C.A. § 1128d. The case has been heard on the pleadings and evidence. At the conclusion of the hearing I rendered an oral opinion in which were made findings of fact in some detail, and a tentative expression of opinion to the effect that the suit must be dismissed; but I reserved final decision pending an opportunity to more carefully study the judicial decisions cited by counsel for the respective parties. The oral opinion was stenographically reported and has now been transcribed. However, the substance of the case can be briefly stated.

The libellant is an American seaman in the Merchant Marine employed as an A. B. Seaman on the vessel James A. Farrell owned by the United States, and in September 1943 was berthed at the Victoria Docks, London, England. On September 21 he obtained shore leave and after midnight in the course of returning to the ship and while crossing as a pedestrian the Silvertown Bridge located a short distance from where the ship was docked, fell from the bridge, during a wartime black-out, some thirty or forty feet to the ground or some structure below the bridge, and sustained severe injuries for which he was hospitalized for over a year, first in or near London and later at the Marine Hospital in Baltimore City. He substantially recovered and in 1945 resumed his occupation as a seaman. He claims to have been entirely disabled for 17 months and claims $1700 under the applicable seaman's insurance policy. The suit was instituted on December 11, 1945, more than two years after the accident occurred, but no point has been made in the case before me as to the period of limitations. The suit was not brought on for trial for more than four years after institution by reason of various postponements at the request of counsel owing to the absence of the libellant, or other causes of delay not attributable to the inability of the court to hear the case.

The coverage of the policy as stated in the libel is as follows:

"Article 3, Risks and Perils. The insurance is for loss of life, disability (including dismemberment and loss of function) loss of or damage to personal effects, and detention (including the occurrence of other situations hereinafter provided) of the insured, directly and proximately caused by risks of war and war-like operations including capture, seizure, destruction by men-of-war, * * * acts of kings, princes and peoples in the prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, * * * or aerial bombardment, or, attempts at, or measures taken in defense of, all of the foregoing acts * * *."

After reviewing the judicial decisions referred to I have reached the conclusion of law that the injury to the libellant was not within the coverage of the policy. It will be noted that the injury occurred not on a ship at all but on land. The suit is not based on liability for maintenance and cure and therefore the recent admiralty decisions to the effect that injuries to seamen occurring on land during leave of absence from the ship are under certain conditions within the reach of the doctrine of maintenance and cure, are not applicable to this suit.

I am not able to find from the evidence in the case that the injury to the libellant was proximately caused by the black-out although it occurred during a black-out. The evidence for the plaintiff does not establish what caused his fall from the bridge. He attributed his fall to an opening or break in the railing of the bridge which he must have failed to see during the black-out, because, as he said, he was told by some person (not identified) a week or more after the accident that there was such a break in the railing of the bridge. But

there is no evidence that there was such a break in the railing of the bridge. The only evidence on the point is to the contrary in the deposition of the Captain of the ship who, on the morning after the accident and by reason of the report, visited the bridge and inspected the place where he understood the accident to have occurred and found no break in the railing or other noticeable defect in the bridge. The bridge is said to have been about 40 feet wide with a raised pavement for pedestrian travel on both sides of the main roadway for vehicular traffic. The railing of the bridge was of concrete and about 5 feet high. It is difficult to see how the libellant could have fallen off the bridge without having climbed on the railing. There was no evidence that he did so or that he was intoxicated at the time. Therefore while the accident occurred during the black-out I do not find as a fact that it was proximately caused by the black-out.

The review of the judicial decisions cited by counsel confirms my previously tentatively expressed view that the accident is not within the coverage of the policy. It will be noted that the coverage is principally based on personal injuries "directly and proximately caused by risks of war and war-like operations". The particular inclusions are those which are peculiarly applicable to ships and seamen and the personnel covered by the policy are the masters, officers and crews of vessels and "other persons employed or transported thereon" against the loss of life, personal injury, or detention related to the prosecution and defense of hostilities. The wording of the insuring clause is, therefore, seemingly not applicable to accidents resulting in personal injury occurring on land and not directly associated with the ship. An aerial bombardment is mentioned as included in the insuring clause but there is no evidence that there was any aerial bombardment at the time of the libellant's injuries or that it was caused thereby.

In Murphy v. United States, D.C.E.D.Pa. 1946, 66 F.Supp. 260, and in Quinn v. United States, D.C.D.Hawaii 1947, 72 F.Supp. 94, seamen injured on shipboard during a black-out were held entitled to recover on this type of policy. But I have not been referred to nor have I found any case where a seaman injured on land during a black-out was held entitled to recover under such a policy. The force of Murphy v. United States has been impaired, if the case has not been in effect overruled, by the subsequent decision of the Court of Appeals for the Third Circuit in Crist v. United States, 163 F.2d 145, certiorari denied 332 U.S. 852, 68 S.Ct. 352. In the still later case of Stofey v. United States, D.C. M.D.Pa., 87 F.Supp. 81, 83, the court held that injury to a seaman on a ship due to the absence of lights during black-out restrictions in war time, was not within the coverage of such a policy. Other persuasive decisions dealing with the construction and application of similarly worded policies to various conditions, other than black-outs, are Reinold v. United States, 2 Cir., 167 F.2d 556; United States v. Standard Oil Co., 2 Cir., 1949, 178 F.2d 488, and Gadsden v. United States, D.C., 54 F.Supp. 151. Cf. General Insurance Co. v. Link, 9 Cir., 173 F.2d 955.

I therefore conclude that the libel must be dismissed. Counsel may present the appropriate order in due course.