**FAISON et al. v. UNITED STATES et al.**
**(two cases).**

United States District Court
S. D. New York.
May 26, 1950.

Harold P. Clune, New York City, for libelants.

**802**

Irving H. Saypol, U. S. Atty., New York City (Benjamin H. Berman, Atty., Dept. of Justice, Washington, D. C.), for respondents.

LEIBELL, District Judge.

### Findings of Fact

1. The libelants, Henry Faison and Floy Faison, as parents of a deceased seaman, and Mertie Faison, as a sister of the deceased seaman, filed a libel (A142-114) on April 12, 1946, against the United States of America to recover, as beneficiaries under a Second Seaman's War Risk Life Insurance Policy, for the loss of life of the seaman, Daniel E. Faison. Jurisdiction thereof was founded on Section 1128d of Title 46 U.S.C.A.

2. On April 11, 1950, at the trial of this action the claim of the plaintiff, Mertie Faison, was discontinued.

3. Another libel (A142-134) by Henry Faison, as Administrator of the Estate of Daniel E. Faison against the United States of America as owner of the vessel, S.S. B. F. Shaw, was filed April 15, 1946 to recover for the wrongful death of the deceased seaman. That libel has been settled on the trial of the action for the sum of $146.25 on condition that this sum would be deducted from the amount of any recovery on the policy of insurance in A142-114.

4. On April 15, 1944 the Steamship B. F. Shaw was owned and operated by the United States of America.

5. On April 15, 1944 Daniel E. Faison was serving as a member of the crew of the S.S. B. F. Shaw while the vessel was in port in Italy and was given shore leave at Castellammare Di Stabia, Italy.

6. On April 15, 1944 Daniel E. Faison was insured under a Second Seaman's War Risk Insurance Policy against loss of life directly and proximately caused by risks of war and warlike operations in the amount of $5,000.00.

7. Article 3 of the policy of insurance provided:

"Risks and Perils. The insurance is for loss of life * * * of the insured, directly and proximately caused by risks of war and warlike operations, including capture, seizure, destruction by men-of-war, sabotage, piracy, takings at sea, arrests, restraints and detainments, acts of kings, princes and peoples in the prosecution of hostilities or in the application of sanctions under the international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, scuttling to prevent capture, aerial bombardment, or, attempts at, or measures taken in defense of, all of the foregoing acts, floating or stationary mines, torpedoes, whether derelict or not, collision caused by failure, in compliance with wartime regulations, of said vessel or any vessel with which she is in collision, to show the usual full peacetime navigation or anchorage lights, stranding caused by the absence of lights, buoys, or similar peacetime aids to navigation consequent upon wartime regulations, stranding caused by the failure of said vessel to employ a pilot in waters where a pilot would ordinarily be employed in peacetime, but in which the employment of a pilot is dispensed with in compliance with military, naval or other governmental orders, or with a view to avoiding imminent enemy attack (for the purposes of the foregoing, the failure to show lights, the absence of lights, buoys, etc., and the failure to employ a pilot shall be presumed to be the cause of the collision or stranding unless the contrary be proved, and stranding shall include sinking consequent upon stranding or contact with any part of the land), collision with another vessel in the same convoy or collision with any military or naval vessel, that is to say, a vessel manned by and under the control of military or naval personnel and designed to be employed primarily in armed combat service, stranding, collision or contact to any external substance (including ice, but excluding water), as a result of deliberately placing the vessel in jeopardy, in compliance with military, naval or other governmental orders in order to avoid imminent enemy attack, or as an act or measure of war taken in the actual process of embarking or disembarking troops or loading or unloading material of war.

"The fact that a vessel, or any vessel with which such vessel is in collision, is carrying troops or military or other supplies, or is proceeding to or from a war base, or is manned or operated by military or naval personnel, shall not alone be sufficient to include in this policy any claim which is not included by the foregoing terms of this article."

8. The insured, Daniel E. Faison, did not designate any beneficiary of said policy of insurance which provided in Article 7:

"Beneficiaries of Insurance for Loss of Life.

&ast; &ast; &ast; &ast; &ast; &ast;

"(3) If the insured fails to designate a beneficiary or if the beneficiary or beneficiaries, whether primary or contingent, die before the insurance or any portion thereof shall be paid, the insurance will, subject to the provisions of paragraph B hereof, be paid to the beneficiary or beneficiaries within the following classes and in the order named:

"(a) If the insured shall be survived by a lawful widow or widower but without any child of him or her surviving, 100 percent to such widow or widower.

"(b) If the insured shall be survived by a lawful widow or widower and a child or children of him or her surviving, 50 percent to the widow or widower and 50 percent to the child or children in equal shares.

"(c) If the insured shall have no lawful widow or widower of him or her surviving but shall have a child or children of him or her surviving, 100 percent to the child or children in equal shares.

"(d) If there shall be no lawful widow or widower or children of the insured of him or her surviving, 100 percent to the parent or parents of the insured in equal shares.

"(e) If there shall be no lawful widow or widower, child or parent of him or her surviving, 100 percent to the brothers, sisters, grandparents and grandchildren of the insured in equal shares."

9. Daniel E. Faison, the insured, left him surviving no widow or children but his parents, the plaintiffs herein, Henry Martin Faison and Floy Faison, survived the deceased.

10. On or about April 15, 1944 while the vessel B. F. Shaw was in port in Italy and Daniel E. Faison was on shore leave at Castellammare Di Stabia, Italy, he lost his life as a result of the collapse of part of the wall of a building located at Via Brin and Vico Cristallina, Castellammare, Italy.

11. A demand for payment of the face value of the Second Seaman's War Risk Life Insurance Policy in the amount of $5,000.00 was made upon the Division of Wartime Insurance of the United States by Harry Faison, a brother of the insured, on August 8, 1944.

12. Said building which was approximately 25 meters in width on Via Brin, 15 meters in width on Vico Cristallina, 15 meters in depth and 20 meters in height, consisted of twelve rooms on the ground floor, second floor, third floor and fourth floor and about six rooms on the fifth floor, and had been constructed about 70 years prior to the time that a side of the building collapsed on April 15, 1944.

13. The foundation of the building was constructed with lime stones and volcanic stones and the thickness of the foundation was about 1 meter or more. The foundation was 3 meters under street level and touched water underground.

14. The walls of the building were constructed of tufa stone and the thickness of the inside and outside walls varied from 1 meter to 50 centimeters from the bottom up. The pavements and the ceilings were supported above the ground floor by wooden and iron poles. The wooden poles were 18 centimeters in diameter and the iron poles were 16 centimeters high.

15. The ground floor of the building was used for shops and the upper floors were used for residence purposes. The building normally was occupied by residents comprising eight families of about five persons in each family. After bombardment of Castellammare, Di Stabia, the building was occupied by some residents.

16. Prior to April 15, 1944 there had been a series of about 100 air raids in Castellammare Di Stabia and on August 10, 1943 the city had been subjected to a naval bombardment.

17. As a result of said raids and bombardments the five story building at Via Brin and Vico Cristallina suffered cracks in a vertical side wall and a large hole in an outside wall which were evidenced upon an inspection of the building on August 10, 1943 by Guglielmo Vanacore, a civil engineer who was employed as Director of Technical Services at the City Hall, Castellammare Di Stabia, Italy, although no fragments or pieces of bombs were found on or near the building.

18. After said inspection the Director of Technical Services made an order for evacuation of the portion of the building where the cracks appeared and notices thereof were sent to the Mayor and to the tenants. A report of the damage was made to the Office of the Civil Engineer at Naples, Italy.

19. The inspection revealed that while the stability of the building was weakened the condition was not dangerous.

20. In September and October of 1943 certain undetermined repairs were made to the building by the Civil Engineer at Naples; tenants thereafter continued to reside in the building; and no further inspection thereof was made until April 15, 1944, more than six months later, when the side wall of the building collapsed killing the insured.

21. The direct and proximate cause of the death of Daniel E. Faison was the collapse of part of the side wall of the building at Via Brin and Vico Cristallina, Castellammare, Italy, on April 15, 1944.

22. The damage to the walls of the building by aerial and naval bombardment was not the direct and proximate cause of the collapse of a part of the vertical side wall or of the death of Daniel E. Faison.

## Conclusions of Law

I. The death of Daniel E. Faison was not directly or proximately caused by risks of war or warlike operations or by any of the risks or perils set forth in Article 3 of the Second Seaman's War Risk Insurance Policy against loss of life.

II. The death of Daniel E. Faison while ashore on leave was not within the coverage of the provisions of the Second Seaman's War Risk Insurance Policy against loss of life.

III. The respondent, the United States of America, is entitled to a decree dismissing the libel against it, founded on the Second Seaman's War Risk Insurance Policy (A142-114) without costs.

IV. The libel (A142-134) having been settled on the trial of the action for the sum of $146.25 the respondent, the United States of America, is entitled to a decree dismissing the libel by the Administrator with prejudice and without costs.

## Memorandum

■ In order to form a basis for a recovery under the Second Seaman's War Risk Insurance Policy for the loss of life of an insured, the risks of war, warlike operations, aerial bombardments and the other risks enumerated in the policy must be shown to be the proximate cause of the seaman's death. Reinold v. United States, 2 Cir., 1948, 167 F.2d 556, certiorari denied 35 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378; Stofey v. United States; D.C.Pa.1950, 87 F.Supp. 81; Carson v. United States, D.C. Md.1950, 89 F.Supp. 114; Ferro v. United States, S.D.N.Y.1947, 74 F.Supp. 250. In United States v. Standard Oil Co., 2 Cir., 1949, 178 F.2d 488, 493, the court defined "war risk" in relation to proximate cause as follows: "Our own court has emphasized that the proximate cause of a loss must have been warlike in order to make the loss a war risk. * * * And search for the 'cause nearest the loss' has been the basis for the determination of liability under analogous circumstances in many other cases. * * * Thus we believe a correct statement of the American rule to be that under a policy which expressly insures against war risks or 'all consequences of hostilities or warlike operations,' the coverage extends only to perils due directly to some hostile action, military maneuver, or operational war danger, and does not include the aggravation or increase of a maritime risk because of war operations."

■ The deceased seaman, Daniel E. Faison, was killed when the vertical side

wall of the building at Via Brin and Vico Cristallina, Castellammare, Di Stabia, Italy, collapsed on April 15, 1944. There is some evidence to indicate that the wall had been weakened and cracked by air raids and a naval bombardment on and prior to August 10, 1943. However the building had been repaired immediately thereafter in September and October of 1943 by the civil authorities, the Civil Engineer at Naples, Italy; it continued to be used for residential purposes; it was, moreover, over 70 years old; and the wall did not collapse until eight months after the damage had been ascertained. In these circumstances the record does not furnish a basis for finding that the direct and proximate cause of the collapse of the side wall was the aerial and naval bombardments. To assign any specific cause for the collapse of the building would be mere conjecture.

Another factor which bars recovery under the Second Seaman's War Risk Insurance Policy in this case is the fact that the injury causing death was sustained ashore while the seaman was on leave and it was not directly associated with the ship. In Carson v. United States, supra, 89 F. Supp. at pages 115, 116, where a seaman fell from a bridge during a blackout while he was on shore leave, Judge Chesnut held: "* * * I have reached the conclusion of law that the injury to the libellant was not within the coverage of the policy. It will be noted that the injury occurred not on a ship at all but on land. The suit is not based on liability for maintenance and cure and therefore the recent admiralty decisions to the effect that injuries to seamen occurring on land during leave of absence from the ship are under certain conditions within the reach of the doctrine of maintenance and cure, are not applicable to this suit. * * * It will be noted that the coverage is principally based on personal injuries 'directly and proximately caused by risks of war and war-like operations'. The particular inclusions are those which are peculiarly applicable to ships and seamen and the personnel covered by the policy are the masters, officers and crews of vessels and 'other persons employed or transported thereon' against the loss of life, personal injury, or detention related to the prosecution and defense of hostilities. The wording of the insuring clause is, therefore, seemingly not applicable to accidents resulting in personal injury occurring on land and not directly associated with the ship."

The injury causing the death of the insured, Daniel E. Faison, was not directly or proximately caused by the war risks or perils enumerated in Article 3 of the Second Seaman's War Risk Insurance Policy and it was not an injury or cause within the coverage of that policy.

Settle a decree accordingly.