## AETNA INSURANCE CO. *v.* UNITED FRUIT CO.*

No. 773. Argued April 25, 26, 1938.—Decided May 23, 1938.

---

*Together with No. 774, *Union Marine & General Ins. Co.* v. *United Fruit Co.,* and No. 775, *Boston Insurance Co.* v. *Same,* also on writs of certiorari to the Circuit Court of Appeals for the Second Circuit.

*Mr. D. Roger Englar,* with whom *Messrs. T. Catesby Jones, Oscar R. Houston,* and *Martin Detels* were on the brief, for petitioners.

*Mr. Cletus Keating,* with whom *Mr. Richard Sullivan* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The question for decision is how far hull insurers upon a valued marine insurance policy are entitled, in case of total loss, to participate by way of subrogation in a recovery by the insured against a tortfeasor responsible for the loss.

In 1918 petitioners, with several other underwriters, insured the hull of respondent's vessel, the "Almirante," by policies in which it was agreed that the value of the hull was $632,610, materially less than its true value. The policies provided for a stipulated indemnity to the owner "irrespective of the value of the vessel," and that the owner was free to effect other insurance to any amount and without disclosure of the amounts so insured. As the total of the valued policies was $582,002.25, respondent was co-insurer for about $50,000; and so far as the valued hull policies were concerned it was uninsured, to the extent of any loss, in excess of the stipulated value. As protection against these risks, respondent procured from English underwriters additional P. P. I. (policy proof of interest) insurance, aggregating £65,105, partly upon hull and partly against other losses incidental to total loss of the vessel. The P. P. I. policies waived all rights of subrogation and were "honor" policies, concededly payable only at the option of the insurers because unenforceable under the Act of Parliament of December 31, 1906, § 4. *Edwards & Co. v. Motor Union Ins. Co.,* [1922] 2 K. B. D. 249.

In 1918 the "Almirante" became a total loss as the result of a collision with the S. S. "Hisko," a vessel belonging to the United States Government. The underwriters of both the valued policies and the P. P. I. policies paid them in full. The former joined with respondent in retaining attorneys to press the claims for collision damages against the United States. Suit brought against the United States under a special act of Congress, resulted in a recovery which included $1,750,000 as the value of the vessel, but without interest since the act did not authorize allowance of interest. Compare *Boston Sand & Gravel Co.* v. *United States,* 278 U. S. 41, 47. Distribution of the proceeds of the suit was made in accordance with a computation by insurance adjusters who apportioned the expenses of the suit among respondent and the underwriters, and allotted to the latter the amounts they had paid on their policies without interest, less their respective shares of the expenses.

Petitioners, who are underwriters on some of the valued hull policies, brought the present suit in the district court for southern New York to participate in respondent's recovery against the United States. Relying on the valuation clause of their policies as conclusively fixing the value of the vessel for all purposes of the adjustment, they contest the allotment, insisting that they should bear no part of the expenses, and that they are entitled to interest on the amounts of their policies from the several dates on which they were paid. They also make, but do not stress here, the point that the hull insurers are entitled to the whole recovery. The district court gave judgment for the full amount which petitioners had paid on their policies without deduction for expenses, but without addition of interest. 18 F. Supp. 441. On appeal by both parties, the Court of Appeals held that petitioners were entitled to neither

interest nor expenses, and modified the judgment according-ly. 92 F. 2d 576. We granted certiorari, 303 U. S. 631, because of the admitted conflict of the decision below with that of the Court of Queen's Bench in *North of England Iron S. S. Ins. Assn.* v. *Armstrong* (1870) L. R. 5 Q. B. 244. See *Queen Insurance Co.* v. *Globe & Rutgers Fire Ins. Co.*, 263 U. S. 487, 493; *Gulf Refining Co.* v. *Atlantic Mutual Ins. Co.*, 279 U. S. 708, 715.

Petitioners' argument turns upon their contention that the valuation clause, either by estoppel or by contract, is conclusive between the parties for all purposes and that as respondent has recovered from the Government more than the stipulated value of the vessel, petitioners are entitled to the benefit of the recovery, at least to the full extent of the payments on their policies with interest. We think that the valuation clause in its usual form does not operate as an estoppel or by agreement to foreclose proof that actual value exceeds agreed value when the question is of the insurer's right to subrogation. The application of the agreed value to the insurance adjustment does not depend upon estoppel; *Gulf Refining Co.* v. *Atlantic Mutual Ins. Co.*, *supra*, 712; *British & Foreign Marine Ins. Co.* v. *Maldonado & Co.*, 182 F. 744, and there can be no basis for an estoppel at least where, as here, the policy provisions undertake to indemnify the insured irrespective of the value of the vessel and contemplate that the insured may effect other insurance. The valuation stipulation fixes in advance of loss the value of the vessel, so as to avoid the necessity of proof of value in order to establish the extent of the liability assumed on the policy. The agreed value, honestly arrived at, thus stands in the place of prime value under an open marine policy, *Gulf Refining Co.* v. *Atlantic Mutual Ins. Co.*, *supra*, 711; *St. Paul Fire & Marine Ins. Co.* v. *Pure Oil Co.*, 63 F. 2d 771, and resembles, in its practical operation, a stipulation for liquidated damages.

But beyond its controlling effect in determining the insurance liability, the clause does not operate to exclude proof of actual value when relevant. Even in an action on the policy the actual rather than the agreed value has been held to be controlling for the purpose of determining whether there is a constructive total loss. *Bradlie* v. *Maryland Ins. Co.*, 12 Pet. 378, 399; *Irving* v. *Manning*, 6 C. B. 391 (H. of L.). In the case of partial insurance of cargo under a valued policy the insured is treated as a co-insurer and is allowed to recover on the policy only such proportion of the loss as the insured value bears to the actual value, a computation which necessarily requires proof of the actual value in order to establish the co-insurance relationship. *Gulf Refining Co.* v. *Atlantic Mutual Ins. Co., supra,* 710–711; see *International Navigation Co.* v. *Atlantic Mutual Ins. Co.*, 100 F. 304, 318, aff'd per curiam 108 F. 987; Arnould on Marine Insurance, 11th Edition, § 340; Eldridge on Marine Policies, 2nd Edition, p. 90. It is true, as was pointed out in *Gulf Refining Co.* v. *Atlantic Mutual Ins. Co., supra,* that in case of valued hull policies losses resulting in repairs are customarily paid in full, not because of agreement or estoppel but because partial losses to hull usually result in repairs without any valuation of the hull and the rule that the recovery shall be measured by repairs has been found more convenient in practice than one requiring determination of the sound value of the ship. See *Lohre* v. *Aitchison*, L. R. 2 Q. B. D. 501, 507. The same rule as in the case of cargo insurance has been applied when repairs were not made, and value was established by the sale of the vessel, *Pitman* v. *Universal Marine Ins. Co.*, L. R. 9 Q. B. D. 192, and in the case of general average contribution by the hull. *S. S. "Balmoral" Co.* v. *Marten*, [1902] App. Cas. 511, 514, 515. The peculiar rule of the insurer's liability for partial loss to hull when repairs are made does not depend on the valuation clause and affords

no basis for treating it as excluding the insured as co-insurer when there is a to' il loss.

These variations in the effect of the valuation clause, in fixing the liability of the insurer, do not alter the character of the valued policy as a contract of indemnity, or afford any basis for alteration of his rights as an indemnitor. Whether upon a valued or an open policy, he is entitled to share in the insured's recovery of damages only by way of subrogation, whose sole object and justification is to make indemnity to the insured up to the amount of the policy, the measure of the liability of the insurer. *Standard Marine Ins. Co.* v. *Scottish Metropolitan Assurance Co.*, 283 U. S. 284, 288; *Aetna Casualty & Surety Co.* v. *Phoenix National Bank & Trust Co.*, 285 U. S. 209, 214; *Chapman* v. *Hoage*, 296 U. S. 526, 531. The doctrine now contended for, would require a radical departure from the principle on which subrogation is founded. Consistently applied, it would in some cases deprive the insured of indemnity, and indeed might enable the insurer to make a profit by recovering more from the insured than the amounts paid on the policy. We are unable to sanction a doctrine involving such consequences.

No question is raised by the petition for certiorari or appears to have been raised below as to the correctness of the adjustment statement, if the valuation clause does not foreclose proof of actual value and if respondent is therefore to be regarded as a co-insurer of the hull in event of total loss. Petitioners make no contention that respondent, if so regarded, has received more than appropriate indemnity after the distribution of the proceeds of the collision suit. The total insurance received by respondent from the insurers in 1918 and 1919, aggregating $886,068, was approximately $863,932 less than the prime value of the vessel, which some thirteen years later it recovered in the collision suit, without allowance of interest and after the expenditure of more than $300,000 as

costs of the litigation. Petitioners submit no interest computations and have otherwise made no effort to sustain the burden of proving that respondent has received more than indemnity for the delay in payment of as much of the loss as was not covered by insurance.

Since the expenses have been apportioned by charging the insured with a proportion greater than its share of the risk, and the apportionment is not assailed except as it may be wholly precluded by the valuation clause, it is unnecessary to consider whether the distribution of expense should be upon principles of co-insurance or whether the insured should be fully indemnified for it before the insurer is entitled to subrogation.

Petitioners point to no practice of underwriters with respect to the valued policy or its rate of premium as compared with that for the open policy, which supports the rule for which they contend. But they insist that it has been adopted in England and has become so well settled in New York where the insurance was effected, that it must be taken to be an implied term of the policies. It is true that *North of England Iron S. S. Ins. Assn.* v. *Armstrong, supra,* lends support to petitioners' argument. There, upon a total loss, the insured had recovered as collision damages an amount less than the agreed valuation and it was held that the insurer, who had paid the policy in full, was entitled to have the benefit of the entire recovery. The court thought that the case was analogous to that of abandonment in case of a constructive total loss where the underwriter, by virtue of the abandonment, is entitled to the wreck and to such profit from it as he can make. Pursuing the logic of its reasoning, the court declared that the insurer would have been entitled to the insured's full recovery even if it exceeded the agreed value. But it seems plain that there is no analogy between the insurer's right to be subrogated to the fruits of the insured's recovery from a wrongdoer

and the insurer's right to a wreck which is his by aban-
donment. *The Potomac*, 105 U. S. 630, 634, *The St.
Johns*, 101 F. 469, 472 (S. D. N. Y.); Arnould on Marine
Insurance, 11th Edition, §§ 1228–1230.

*North of England Iron S. S. Ins. Assn.* v. *Armstrong,
supra*, was cited in *The Potomac, supra*, 635, and in
*Mobile & Montgomery Ry. Co.* v. *Jurey*, 111 U. S. 584,
594, 595, neither of which involved the question now
presented. It was followed in *The St. Johns*, but not to
the extent of allowing a profit to the insurer. In *The
Livingstone*, 130 F. 746 (C. C. A. 2), the claim of a
valued hull insurer to the whole collision recovery, which
exceeded the agreed value, was denied upon reasoning
which rejected that of *North of England Iron S. S. Ins.
A: n.* v. *Armstrong, supra*, and *The St. Johns, supra*, and
cals for affirmance of the judgment here. Interest was
allowed to the insurer, apparently because interest on
the full value of the vessel had been recovered in the
damage suit. Without discussing the point the court by
its mandate directed payment to the underwriters of
the full amount of their policies without deduction for
expenses. But as it considered that the insurer's right
of recovery rested upon subrogation unaffected by the
valuation clause, we cannot regard the case as an inten-
tional departure from the rule that the insurer is entitled
to subrogation only after the insured is appropriately
indemnified, or as establishing any rule that the valuation
clause forecloses proof of actual value as a step in measur-
ing the insurer's recovery by way of subrogation.

We recognize that established doctrines of English
maritime law are to be accorded respect here, *Queen Ins.
Co.* v. *Globe & Rutgers Fire Ins. Co., supra*, 493; *Gulf
Refining Co.* v. *Atlantic Mutual Ins. Co., supra*, 715, but
the pronouncement in *North of England Iron S. S. Ins.
Assn.* v. *Armstrong, supra*, has never been adopted by

an English appellate court. It was doubted by eminent judges in *Burnand* v. *Rodocanachi Sons & Co.*, [1882] L. R. 7 App. Cas. 333, 342, and in *Thames & Mersey Marine Ins. Co.* v. *British & Chilean S. S. Co.*, [1915] L. R. 2 K. B. 214, 221. Its reasoning, conflicting as it does with established principles of maritime insurance law, and found to be incapable of consistent application both in *The St. Johns, supra*, 474-475, and in *The Livingstone, supra*, 750, should be rejected here.

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.