*1004-15*

COURT OF CRIMINAL APPEALS


PETITION FOR DISCRETIONARY REVIEW

WITH A PETITION BRIEF

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 18 2015

Abel Acosta, Clerk

MANUEL PENA,
[Appellant Pro Se]

VS.

THE STATE OF TEXAS


TRIAL COURT CAUSE NO. 2009-CR-1438-A
COA CASE NO. 13-14-00175-CR
107th JUDICIAL DISTRICT COURT
CAMERON COUNTY, TEXAS

Hon. BENJAMIN EURESTI

FILED IN
COURT OF CRIMINAL APPEALS

SEP 18 2015

Abel Acosta, Clerk

TABLE OF CONTENTS

|  | PAGE |
|---|---|
| IDENTIFICATIONS OF THE PARTIES | ii |
| INDEX OF AUTHORITIES | iii |
| STATEMENT OF THE CASE | 1 |
| ISSUE PRESENTED<br>The court of Appeals did err by holding that the Appellant's Sixth Amendment waiver was valid. | 1 |
| STATEMENT OF THE FACTS | 1-2 |
| SUMMARY OF THE ARGUMENT | 2-3 |
| STANDARD OF REVIEW | 2-3 |
| ARGUMENT | 4 |
| HARM ANALYSIS | 5 |
| PRAYER | 5 |
| CERTIFICATE OF SERVICE | 5 |

IDENTIFICATION OF THE PARTIES


APPELLANT Pro Se

Manuel Pena
TDCJ #1910565
Connally Unit
899 FM 632
Kenedy, Texas   78119


CAMERON COUNTY DISTRICT ATTORNEY

Luis V. Saenz
964 E. Harrison St.
Brownsville, Texas   78520

# INDEX OF AUTHORITIES

PAGE

Brewer v, State 430 U.S. 387, 97 S.Ct. 1232 (1977)  4

Carter v. State 309 SW3d 31 (Tex.Crim.App. 2010)  3

Dowthitt 931 SW2d at 257  3

Fulminante 499 U.S. at 296, 111 S.Ct. at 1257  4,5

Guzman v. State 955 SW2d 85 (Tex.Crim.App 1997)  4

Herrera 241 SW3d at 526  5

Hill v. Bartlette 181 SW3d 541 (Tex. App. 2005)  4

Jones 119 SW3d at 777  5

Kirby v. Illinois 406 U.S. 682 (1972)  4

Martinez 272 SW3d at 619  2-3

Miranda v. arizona 384 U.S. 436  2-3

Patterson v. Illinois 487 U.S. 285 (1986)  4

Seibert 542 U.S. at 622  3

State v. ross 32 SW3d 853 (Tex.Crim.App. 2000)  4

St.George v. State 237 SW3d 720 (Tex.Crim.App. 2007)  2

Upton v. State 853 SW2d 553 (Tex.Crim.App. 1993)  5

U.S. v. Polanco 93 F3d 555 (9th Cir. 1996)

## STATUTES

Texas Code of Criminal Procedures 38.22  4

Texas Rules of Appellate Procedures  44.2  5

STATEMENT OF THE CASE

NATURE OF THE CASE:  Appellant was charged by indictment for the
offense of capital murder.

TRIAL COURT:  107th Judicial District Court
Cameron County, Texas
Hon. Benjamin Euresti, Presiding Judge

PROCEEDINGS:  Appellant pleaded "Not Guilty" to the offense of
capital murder.  A jury was selected for the trial
on the merits, guilt/innocence phase.  On February
24, 2014, the trial began, and continued until
February 27, 2014, when a verdict was reached.

TRIAL COURT DISPOSITION:  The jury found Appellant guilty of
capital murder.  The trial judge sente-
nced Appellant to LIFE Without parole in
the Texas Department of Criminal Justice.

The trial court granted Mr. Pena's Motion as to the first state-
ment, considering that the State conceded the point, but denied
Mr. Pena's Motion to Suppress as to his second statement.
(25 R. P.74, lines 13-23).

ISSUE PRESENTED

THE COURT OF APPEALS DID ERR BY HOLDING THAT APPELLANT'S
SIXTH AMENDMENT WAIVER WAS VALID.

STATEMENT OF FACTS

On April 20, 2009 Law Enforcement Officers in San Benito,
Texas were investigating a murder case that occurred the day
before. (25 R. P. 10, lines 18-21).  Investigators then prepared
a complaint and affidavit for a warrant of arrest for Mr. Pena.
(25 R. P.28, lines 14-24; State's Exhibits 5 and 6).  Officers
informed Mr. Pena of his Miranda warnings six minutes after his
arrest. (25 R. P.39).  Mr. Pena requested and was provided
court-appointed counsel. (25 R. P.43, lines 14-21; P.53, lines
5-14).  He was approached by Law Enforcement Officers who obtained
a statement from him. (25 R. P.53, lines 15-22; P.54-55, lines
24-4 ).  Mr. Pena, without the benefit of counsel, unilaterally

waived his right to have counsel present. (25 R. P.54, lines 6-10; P.55, lines 1-2; P.57, lines 6-9). After he gave his first statement, he was transferred to the Cameron County Jail (25 R. P.45, lines 7-18). The process continued while in jail (25 R. P.45, lines 1-3). Officer Morales testified that after he gave his first statement "we just continued following up information". (25 R. P.45, lines 1-3). Ten days after the transfer he waived his sixth amendment right to the assistance of counsel (25 R. P.46, lines 13-22). He did so by sending a note (State's Exhibit 10). After the Officers took his statements, no efforts were made by the Officers to determine of an attorney. He did not know he could have an attorney present. (25 R. P.57, lines 20-24), see alsocross-examination of Officer Morales (25 R. P.57-58, lines 20-25).

## SUMMARY OF THE ARGUMENT

Appellant states that the note he sent to police officers requesting to speak with them and his second statement, like his first should have been excluded from evidence at trial because they were obtained in violation of his sixth amendment right to counsel. More specifically, eventhough there is a purported waiver of right to counsel, his waiver was invalid because his sixth amendment right to counsel had attached, he was represented by court-appointed counsel at the time of the waiver, and he made the waiver without the benefit of counsel. Upton v. State 853 SW2d 553 (Tex. Crim. App. 1993); Miranda v. Arizona 384 U.S. 436, 86 S.Ct. 1602 (1986).

## STANDARD OF REVIEW
### of Motion to Suppress

Individuals subjected to custodial police questioning in Texas are protected by the U.S. Supreme Court decision in Miranda v. Arizona and by Article 38.22 of the Tex. Code Crim. Proc. Herrera, 241 SW3d at 526 (stating that both Articles 38.22 and Miranda apply when persons are in custody and being interrogated). In Miranda, the U.S. Supreme Court held that "when an individual is taken into custody and is subjected to questioning, the privilege against self-incrimination is jeopardized." Id U.S. at 478, Id S.Ct. at 1630.

Consequently, such questioning requires that the person be informed of his right to remain silent and his right to an attorney. Id at 479, 86 S.Ct. at 1630. After the Miranda warnings have been given, a person may then knowingly and voluntarily waive his rights. Id. "But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." Id. Evidence obtained as a result of a custodial interrogation without such warnings and waiver is inadmissible under the fifth amendment. See Id. at 494, 86 S.Ct. at 1638. It is also inadmissible under Art.38.22 sect. 2 of the Tex. Code Crim. Proc. (version 2005). An accused who is held in custody must be given Miranda warnings prior to questioning or the State is generally "required to forfeit the use of any statement obtained during the interrogation during its case-in-chief." Martinez 272 SW3d at 619 n.10 (citing Miranda384 US at 444, 86 S.Ct. at 1612). Appellant states the police deliberately used a two-step interrogation technique of "question first warn later", in a calculated way to undermine the Miranda warning. See Carter v. State 309 SW3d 31,36 (Tex. Crim. App. 2010); see also Martinez 272 SW3d at 623 (quoting Seibert 542 U.S. at 622, 124 S.Ct. at 2616) Kennedy, J. concurring.

Under similar circumstances, in Jones v. State, The Texas Court of Criminal Appeals held that the appellant was "clearly in custody" for purposes of Miranda 119 SW3d 766, 771-72,776 (Tex.Crim.App. 2003). The defendant in that case was under arrest and incarcerated for outstanding traffic warrants and for possession of a controlled substance when he was interviewed. Id at 771. While incarcerated, he had given two statements implicating himself in a murder and had received Miranda warnings for both. Id. Nine or Ten days later, he was questioned while in jail about two extraneous murders on the basis of information obtained by investigators. Id. He was not given Miranda warnings before being confronted with the statements of his "good friend, Ricky Red Roosa", and told Roosa had named him as primarily responsible for the murders. Id. The Court of Criminal Appeals stated: Jones 119 SW3d at 771-72. See Dowthitt 931 SW2d at 257 (holding custody began when appellant

admitted to his presence during murders).

## ARGUMENT

Attachment of sixth amendment right to counsel as defined by Subsection 38.22 of the Tex. Code of Crim. Proc.

The State's opinion agreed that appellant was correct in stating that his sixth amendment right to counsel attaches at the initiation of adversarial proceedings. See pg 6 of the State's brief. In Texas "A" person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. Kirby v. Illinois 406 U.S. 682 (1972). Thus, once a person has been charged and has become an accused the custodial interrogation must cease until an attorney is present to assist. Patterson v. Illinois 487 U.S. 285, 290 (1986); Upton v. State 853 SW2d 548 (Tex.Crim.App. 1993). The existence of an attorney-client relationship can be shown by proving the existence of a contractual relationship established "explicity or by conduct". Hill v. Bartlette 181 SW3d 541, 547 (Tex App. - Texarkana 2005) no pet.

After appellant was arrested pursuant to a valid arrest warrant, the adversarial process began (25 R. P. 39). He triggered his sixth amendment right by asking for appointed counsel when he was taken before a magistrate judge. (25 R. 39). His request for counsel was signed, and as the State conceded, he had an attorney at this point. (25 R. P.43). Appellant's sixth amendment right to counsel attaches at the initiation of the adversarial proceedings. Brewer v. Williams 430 U.S. 387, 398; 97 S.Ct. 1232 (1977).

This Court should use a bifurcated standard of review. See St.George v. State 237 SW3d 720, 725 (Tex.Crim.App. 2007). This Court should review de novo mixed questions of law and fact not falling within that category. See State v. Ross 32 SW3d 853, 856 (Tex.Crim.App 2000)(citing Guzman v. State 955 SW2d 85, 89 (Tex.Crim. App. 1997).

## HARM ANALYSIS

The admission into evidence of a statement taken in violation of <u>Miranda</u> rights is constitutional error subject to Harmless Error Review under Tex.Rules App. Proc. 44.2(a); <u>Jones</u> 119 SW3d at 777. In such a case, reversal is required unless this Court determines beyond a reasonable doubt that the failure to suppress the statement did not contribute to the jury's verdict. Tex.R.App.P. 44.2 (a); <u>Jones</u> 119 SW3d at 777. In the context of a <u>Miranda</u> violation this Court must judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from the error. Id. (quoting <u>U.S. V. Polanco</u> 93 F3d 555,562-63 (9th Cir. 1996).

A defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. The actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind, even if told to do so. (quoting <u>Fulminante</u> 499 U.S. at 296, 111 S.Ct. at 1257).

Appellant has shown that he is entitled to relief deemed just.

### PRAYER

Appellant PRAYS for this Court to use the correct standard.

### CERTIFICATE OF SERVICE

On this the _14th_ day of _SEPT._, 2015, Appellant sent this PDR with Petition to the:

Court of Criminal Appeals
P.O. Box 12308 Capitol Station
Austin, Texas 78711

Attn: Abel Acosta, Court Clerk

Respectfully submitted,

*Manuel Pena*

Appellant Pro Se #1910565
Connally Unit
999 FM 632
Kenedy, Texas 78119



NUMBER 13-14-00175-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| MANUEL PEÑA, | **Appellant,** |
| v. | |
| THE STATE OF TEXAS, | **Appellee.** |

### On appeal from the 107th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

A Cameron County jury found appellant Manuel Peña guilty of capital murder, *see* TEX. PENAL CODE ANN. § 19.03(a)(2) (West, Westlaw through 2013 3d C.S.), and he was sentenced to life imprisonment without the possibility of parole. By one issue, Peña asserts that the trial court erred in denying his motion to suppress statements made in

violation of his Sixth Amendment right to counsel. We affirm.

## I. BACKGROUND[1]

The State alleged that Peña murdered Ramon Pinon while in the course of committing or attempting to commit a burglary of Pinon's habitation. *See id.* Before trial, Peña filed a motion to suppress two statements that Peña provided to the police following his arrest.

At the suppression hearing, the State called Martin Morales, Jr., a former detective and current chief of police for the San Benito Police Department. Morales testified that he took part in the Pinon homicide investigation, after Pinon's body was discovered on April 19, 2009. Morales testified that on April 20, 2009, Cecilia Paz entered the police department with information about the Pinon murder. According to Morales, Paz told him that Peña arrived at her residence on April 19 and "began speaking about the incident that occurred . . . the day before." Paz later identified Peña through a photo lineup. Paz told Morales that Peña attempted to sell her a small CD radio, a small television set, and an electric circular saw. Paz indicated that she had purchased the circular saw from Peña. Morales further testified that these items were the same items reported missing from Pinon's residence. Paz told Morales that Peña had told her that "he had beaten up a [Spanish word for old man]". Pinon's son, Ramon Pinon Jr., provided a statement to police and identified a Black & Decker circular saw, retrieved from Paz, as belonging to his father.

---

[1] As this is a memorandum opinion, and the parties are familiar with the facts, we will recite only the relevant facts necessary for the disposition of this appeal. *See* TEX. R. APP. P. 47.4.

Morales applied for an arrest warrant and attached a "complaint affidavit," as well as other documents, including the statements from Paz and Pinon Jr. An arrest warrant was issued on April 20, 2009, and Peña was arrested later that evening. Shortly after his arrest, police read Peña his *Miranda* warnings. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2013 3d C.S.). On April 21, 2009, Peña appeared before a magistrate, and Peña requested court-appointed counsel. *See id.* art. 15.17 (West, Westlaw through 2013 3d C.S.).

After his arrest and request for court-appointed counsel, Peña made two statements to the San Benito police—the first on April 22, 2009 and the second on April 30, 2009. The trial court ordered the April 22nd statement suppressed, after the State stipulated at the suppression hearing that it was inadmissible. The April 30th statement, however, was the result of Peña sending police a handwritten note asking to speak to them about the investigation "without [his] attorney present." The State argued that the second statement was the product of Peña's "free will" and after his *Miranda* warnings were read to him four times. The trial court agreed with the State and denied Peña's motion to suppress his April 30th statement.

The trial proceeded, and after four days of receiving evidence and arguments, the jury found Peña guilty of capital murder. The trial court assessed Peña's punishment at life imprisonment without parole in the Texas Department of Criminal Justice—Institutional Division. This appeal followed.

## II.    MOTION TO SUPPRESS

By his sole issue, Peña asserts that the trial court erred in failing to suppress his April 30th statement to police because it was obtained in violation of his Sixth Amendment

3

right to counsel.[2]

## A.  Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied facts. *Johnson*, 414 S.W.3d at 192.

Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

Both parties acknowledge the trial court did not file findings of fact and conclusions of law. However, we agree with the State's concession that such findings are unnecessary because the issue on appeal is not related to disputed facts, but turns upon an application of law to facts, whose resolution does not turn on an evaluation of credibility

---

[2] Although Peña asserts that his statement was obtained in violation of his Sixth Amendment right to counsel, his arguments appear to challenge his right to counsel under the Fifth Amendment. Accordingly, we will analyze it as such.

4

and demeanor. *See Guzman*, 955 S.W.2d at 89. Accordingly, we will conduct a de novo review of this issue.

## B. Discussion

Peña argues that "even though there is a purported waiver of right to counsel" related to his April 30th statement, such a waiver is invalid because he was represented by counsel at the time he made the purported waiver and made the waiver without the benefit of counsel. We disagree.

The United States Supreme Court devised a prophylactic rule in *Edwards v. Arizona*, 451 U.S. 477, 484 (1981) designed to "protect an accused in police custody from being badgered by police officers." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983); *see Cross v. State*, 144 S.W.3d 521, 526 (Tex. Crim. App. 2004) (recognizing the *Edwards* rule and the reasoning behind it). Simply stated, "an accused . . . having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police." *Edwards*, 451 U.S. at 484. Thus, under *Edwards*, a defendant's "discomfort" in dealing with police without the guiding hand of counsel is presumed to persist unless the suspect himself initiates further conversation about the investigation. *Cross*, 144 S.W.3d at 526 (citing *Arizona v. Roberson*, 486 U.S. 675, 684 (1988)). But the Supreme Court has also explicitly stated that a suspect is not "powerless to countermand his election" to speak only with the assistance of counsel. *Id.* (citing *Edwards*, 451 U.S. at 485). The Supreme Court clarified the *Edwards* rule and established a two-step procedure to determine whether a suspect has waived his previously invoked right to

counsel.  *Id.* at 526–27 (citing *Oregon v. Bradshaw*, 462 U.S. 1039 (1983) (plurality op.)). The first step requires proof that the suspect himself initiates further communication with the authorities after invoking the right to counsel.  *Id.*  The second step requires proof that, after he reinitiates communication with authorities, the suspect validly waives the right to counsel voluntarily, constituting a knowing and intelligent relinquishment or abandonment of a known right or privilege, depending upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.  *Edwards*, 451 U.S. at 482; *Cross*, 144 S.W.3d at 527.

The critical inquiry at this stage of the proceedings then turns to whether Peña was further interrogated before he reinitiated conversation with law enforcement officials.  *Id.* at 529 (citing *Willie v. Maggio*, 737 F.2d 1372, 1384 (5th Cir. 1984)).  If he was not, the *Edwards* rule is not violated.  *Id.*; *see also McCarty v. State*, 65 S.W.3d 47, 52 n.6 ("Of course, if the arrestee reinitiates the conversation, the *Edwards* rule is satisfied.").  The court of criminal appeals further explained the *Edwards* rule in the following manner, which we find helpful:

> A suspect's invocation of his right to counsel acts like a protective *Edwards* bubble, insulating him from any further police-initiated questioning. Only the suspect himself can burst that bubble by both initiating communications with police and expressly waiving his right to counsel. Once that bubble is burst, however, *Edwards* disappears, and the police are free to reinitiate any future communications and obtain any further statements as long as each statement is voluntarily made after the waiver of *Miranda* rights.

*Cross*, 144 S.W.3d at 529.

The day after Peña's arrest, he appeared before a magistrate and requested court-appointed counsel.  At that point, it was presumed under *Edwards* that Peña invoked his Fifth Amendment right to counsel and did not want to deal with the police without the

6

"guiding hand of counsel" present. *See Edwards*, 451 U.S. at 484–85; *Cross*, 144 S.W.3d at 526. As a result, the State conceded at the suppression hearing that Peña's first statement to police on April 22nd was unconstitutional, which obligated the trial court to suppress that statement. However, eight days later, Peña voluntarily sent police a witnessed handwritten note that stated the following:

> I Manuel Peña would like to talk to S.B.P.D. about my case. I do this on my free will. I ~~don't~~ have not promise nothing [sic] in return. .without out my attorney present [strikethrough in original]

As a result of Peña sending this note, the presumption that Peña chose not to speak to police without the assistance of counsel under *Edwards* disappeared. *See id.* at 529. Furthermore, prior to making his April 30th statement to police, Peña knowingly and intelligently relinquished several of his rights in writing, including his right: (1) to "have a lawyer present to advise [him] either prior to any questioning or during any questioning; (2) to have a lawyer appointed "prior to or during any questioning; (3) "to remain silent and not make any statement at all and that any statement [made by him] may be used in evidence against [him] at trial;" and (4) "to terminate [the] interview at any time." Peña also acknowledged that he understood all of the aforementioned rights, and did not wish to consult with a lawyer. Finally, he, again, in writing waived his right to counsel and right to remain silent.

We conclude that the protections provided under *Edwards* disappeared in this case because Peña himself initiated further communication with the police through his handwritten note, despite invoking his right to counsel nine days prior, and after reinitiating that communication, Peña validly waived his right to counsel voluntarily, constituting a knowing and intelligent relinquishment and abandonment of his rights.

7

*See Edwards*, 451 U.S. at 482; *Cross*, 144 S.W.3d at 527. Accordingly, the trial court did not err in denying Peña's motion to suppress his April 30th statement. We overrule Peña's sole issue on appeal.

### III. CONCLUSION

We affirm the trial court's denial of Peña's motion to suppress.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
25th day of June, 2015.

8