The REPUBLIC OF CHINA, China Merchants Steam Navigation Company, Limited, and The United States of America, Libellants,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Respondent.

No. 3507.

United States District Court
D. Maryland.
July 10, 1958.

Ober, Williams, Grimes & Stinson and William A. Grimes, Baltimore, Md.; Kirlin, Campbell & Keating, New York City; and Ronald A. Capone, Washington, D. C., for Republic of China & China Merchants Steam Navigation Co., Ltd.

George Cochran Doub, Asst. Atty. Gen. of U. S., Civil Div., Leavenworth Colby, Chief Admiralty Section, Dept. of Justice, Thomas F. McGovern, Atty., Admiralty Sec., Dept. of Justice, Washington, D. C., and Leon H. A. Pierson, U. S. Atty., and William J. Evans, Asst. U. S. Atty., Baltimore, Md., for United States.

Lord, Whip & Coughlan, Baltimore, Md., George W. P. Whip, Baltimore, Md., Bigham, Englar, Jones & Houston and Vincent L. Leibell, Jr., New York City, for respondents.

THOMSEN, Chief Judge.

Libellants, insured owners and mortgagee of the Hai Hsuan, having abandoned to respondent insurer all their right, title, and interest in the vessel as a constructive total loss, now seek to participate in the salvage in that proportion (20%) which their Increased Value (P. P. I.) insurance bears to the total insurance, because the P. P. I. policy provides: "This insurance is without benefit of salvage."

The Hai Hsuan was lost to libellants by barratry in January, 1950, when her crew defected to the Chinese Communist Government and took her into Singapore. See D.C., 142 F.Supp. 551; D.C., 151 F. Supp. 211; 4 Cir., 254 F.2d 177. By let-

ter dated April 13, 1950, libellants notified respondents of the loss of the Hai Hsuan, abandoned to respondents all their right, title and interest in the vessel, and claimed from respondents as a total loss the full amount for which the vessel was insured. Although respondent refused to accept abandonment and disclaimed liability, the final decree to be entered on mandate will provide that libellants recover from respondent insurer the sum of $550,000 ($440,000 under the War Risk Hull Policy and $110,000 under the War Risk Increased Value Policy), for the total loss of the Hai Hsuan, with interest thereon.

After the previous hearings in this court, the Chinese Communist Government transferred its interest in the Hai Hsuan to a private corporation. Thereafter the United States, acting for itself and all other parties in interest, obtained possession of the Hai Hsuan through legal proceedings in Singapore, and with the approval of respondent insurer, sold her in September, 1957, for $150,102. The expenses properly chargeable against such salvage amount to $38,662.16, leaving a net salvage of $111,439.84.

Respondent also insured the Hai Hsuan for $550,000 on a Marine Hull Policy No. 3–300050–7. This court has heretofore decided (151 F.Supp. 211, 237–238) that the losses sustained by libellants were covered by the War Risk, rather than the Marine, policies. For present purposes therefore it is necessary only to consider the provisions of the War Risk policies.

The War Risk coverage obtained by libellants on the Hai Hsuan is included in two policies issued by respondent insurer through its agent, American International Underwriters, Ltd., both of which cover a number of vessels. Policy No. 3–300069–7 is a Hull Policy, insuring the several vessels in various amounts according to a schedule attached to the policy. There was no separate valuation or insurance on machinery. Policy No. 3–300070–7, although bearing on its cover page the words "Hull Policy", is a policy on "Increased Value Including Excess Liabilities". It also insures the several vessels in various amounts according to an attached schedule.

Each policy contains the following provision with respect to valuation: "It is further expressly warranted and agreed that the valuation of the vessel fixed in this policy shall alone be taken as the sound value of the vessel in all questions regarding liability for total &/or constructive total loss under this policy." The Hull Policy further provides: " * * * the said Vessel, for so much as concerns the Assured, is and shall be rated and valued at 'as per schedule attached'." The Increased Value Policy provides: " * * * the said Vessel, for so much as concerns the Assured, is and shall be rated and valued at 'Total Sum Insured This Interest'."

In the schedule attached to the Hull Policy there appears, in a column headed "Hull Value and Amount Insured", the figure of $440,000 for the Hai Hsuan. The schedule attached to the Increased Value Policy shows, in the column headed "Increased Value Amount Insured", the figure of $110,000 for the Hai Hsuan.

■ A clause annexed to the Increased Value policy contains, inter alia, the following provisions:

"This insurance covers only:—(a) Total Loss (Actual or Constructive) of The Vessel

"In ascertaining whether the Vessel is a constructive total loss the insured value in the policies on Hull and Machinery shall be taken as the repaired value, and nothing in respect of the damaged or break-up value of the Vessel or wreck shall be taken into account.

"Should the Vessel be a constructive total loss but the claim on the policies on Hull and Machinery be settled as a claim for partial loss, no payment shall be due under this clause.

"Provided that the policies on Hull and Machinery contain the above clause with respect to the method of ascertaining whether the Vessel is a constructive total loss (or a clause

having a similar effect) the settlement of a claim for total or constructive total loss under the said policies shall be accepted as proof of the total loss of the Vessel under this policy; and in the event of a claim for total loss or constructive total loss being settled under the policies on Hull and Machinery as a compromised total loss, the amount payable hereunder shall be the same percentage of the sum hereby insured as is paid on the sum insured under said policies. All of the foregoing is subject nevertheless to the F. C. & S. Clause in this policy.

\*   \*   \*   \*   \*   \*

"This slip is no part of the Policy and is not to be attached thereto, but is to be considered as binding in honor on the Underwriters; the Assured, however, having permission to remove it from this Policy should they so desire.

"Full interest admitted; the Policy being deemed sufficient proof of interest.

"This insurance is without benefit of salvage." [1]

In summary, the War Risk Hull Policy provided that the Hai Hsuan was insured for and valued at $440,000. The War Risk Policy on Increased Value covered against Total Loss in the amount of $110,000. It provided that in ascertaining whether the vessel was a constructive total loss, the insured value in the policies on hull and machinery (the Hull Policy) would control. The Increased Value Policy contained the clause: "This insurance

is without benefit of salvage." The policy on hull and machinery (the Hull Policy), however, contained no such provision.

Libellants contend that under those circumstances the insurer is entitled, at the most, only to that portion of the net salvage which the $440,000 covered by the Hull Policy bears to the $550,000 total insured value, or in other words, to 80% of the net salvage. For the reasons stated below, however, I hold that respondent insurer is entitled to a credit for the entire net salvage.

Libellants abandoned the vessel to respondent insurer as a constructive total loss and claimed the full amount of the insurance. The Court of Appeals has held that respondent insurer must pay for a total loss. Unless that decision is reversed by the Supreme Court, the abandonment must be deemed valid.

■ For a general discussion of the effect of abandonment, see Arnould on Marine Insurance, 14th Ed., ch. 30, secs. 1182–1224. Where there is a valid abandonment, the insurer is entitled to take over the interest of the assured in whatever may remain of the subject matter insured, and all proprietary rights incidental thereto. Phillips on Insurance, sec. 1707, states: "The payment of a total loss by the insurers, or their liability to pay such a loss in consequence of an abandonment, gives them an equitable right to the property, or what remains of it, so far as it was covered by the policy, including the spes recuperandi, and the rights identified with the insurable inter-

---

1. Such a policy is known as a P.P.I. policy (policy proof of interest). For a historical discussion of this type of policy, see Arnould on Marine Insurance, 14th Ed., by Lord Chorley of Kendall, secs. 9, 311–313. P.P.I. policies have been made illegal in England by act of Parliament as wagering contracts. Aetna Ins. Co. v. United Fruit Co., 304 U.S. 430, 432, 58 S.Ct. 959, 82 L.Ed. 1443. "But in the United States it is held that, while a wager policy on property in which the insured has no interest is void as against public policy, the provision in the policy that that instrument shall be proof of in-

terest does not render the policy void if the insured in fact had an insurable interest, and that such policies are to be deemed policies on interest if the contracting parties so understood and agreed." Brown v. Merchants' Marine Ins. Co., 9 Cir., 152 F. 411, 412; Alsop v. Commercial Ins. Co., 1 Summ. 451, Fed.Cas.No.262, Story, J.; Frank B. Hall & Co. v. Jefferson Ins. Co., D.C.S.D. N.Y., 279 F. 892; Arnould, op. cit., sec. 321, n. 2; 1 Phillips on Ins., sec. 7. See also Aetna Ins. Co. v. United Fruit Co., supra.

816

est or depending upon the possession of it."

■ The general rule with respect to distribution of the salvage among the underwriters is stated by Arnould as follows: "Upon abandonment each of the underwriters is entitled to share in the proceeds of the salvage, according to the proportion which the amount of his subscription bears to the whole value of the thing insured; * * *". Sec. 1215. See also Brown v. Merchants' Marine Ins. Co., 9 Cir., 152 F. 411. But "* * * where the assured is insured for an amount less than the insurable value or, in the case of a valued policy, for an amount less than the policy valuation, he is deemed to be his own insurer in respect of the uninsured balance." Arnould, sec. 1215.

■ In the instant case, it has not been shown what the value of the Hai Hsuan really was. Specifically, it has not been shown that her actual value exceeded the $550,000 for which she was insured under the two policies, nor indeed the $440,000 for which she was insured and valued under the Hull Policy. Libellants, therefore, are not in the position of coinsurers in respect of any uninsured value. Nor does the fact that the Increased Value Policy was "without benefit of salvage" make libellants coinsurers.

The fund to be distributed is the net salvage from the sale of the vessel herself, and not the proceeds of a tort suit to recover for her loss. The subrogation cases cited by libellants are not in point. In Aetna Ins. Co. v. United Fruit Co., 304 U.S. 430, 58 S.Ct. 959, the Supreme Court said: "* * * it seems plain that there is no analogy between the insurer's right to be subrogated to the fruits of the insured's recovery from a wrongdoer and the insurer's right to a wreck which is his by abandonment." 304 U.S. 437, 438, 58 S.Ct. 962. The present case is in the latter category. See also The Livingstone, 2 Cir., 130 F. 746; Arnould, secs. 1187, 1228, 1229.

The amount of the salvage ($111,439.-84) was not only less than the total insurance ($550,000), but also less than the amount insured and payable under the Hull Policy ($440,000).

Libellants have recovered judgment against respondent insurer for their total loss, under both policies, with interest; it would be inequitable to permit them to share in the net salvage to the prejudice of the insurer.

Respondent insurer is entitled to the entire net salvage.