EL FENIX DE PUERTO
RICO, Plaintiff,

v.

Luis M. SERRANO GUTIERREZ,
and First Federal Savings
Bank, Defendants.

Luis M. SERRANO GUTIERREZ,
Plaintiff,

v.

COMPAÑIA DE SEGUROS EL FENIX
DE PUERTO RICO, and First Federal
Savings Bank, Defendants.

Civ. Nos. 90–1382JP, 90–1583JP.

United States District Court,
D. Puerto Rico.

Oct. 17, 1991.

Fernando D. Castro, Calvesbert & Brown, San Juan, P.R., for El Fenix de Puerto Rico.

Francisco López Romo, Old San Juan, P.R., for Serrano Gutiérrez.

Rafael Mayoral Morales, San Juan, P.R., Latimer, Biaggi, Rachid & Godreau, Santurce, P.R., for First Federal.

## JUDGMENT

PIERAS, District Judge.

The Court hereby adopts the Findings of Fact and Conclusions of Law contained in the Report and Recommendation of Magistrate Judge Justo Arenas, dated September 9, 1991. In accordance with the aforementioned Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED, and DECREED that summary judgment is entered in favor of plaintiff El Fénix de Puerto Rico and against co-defendants Luis M. Serrano Gutiérrez and First Federal Savings Bank pursuant to Rule 56 of the Federal Rules of Civil Procedure, and declaratory judgment is entered in favor of plaintiff El Fénix de Puerto Rico pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

The policy issued by El Fénix de Puerto Rico (No. Y–103142) is declared null and void. Neither defendant herein is entitled to indemnification from El Fénix for the loss of "HOT SHOT," or any coverage under the voided terms and conditions of said policy.

The Court further adopts the Magistrate's conclusion that attorneys' fees should be awarded to plaintiff and hereby awards fees in the amount of $34,966.53. *See F.D. Rich & Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Gradmann & Holler GmbH v. Continental Lines*, 679 F.2d 272, 273 (1st Cir.1982).

IT IS SO ORDERED.

## MAGISTRATE'S REPORT AND RECOMMENDATION

JUSTO ARENAS, United States Magistrate Judge.

On November 13, 1989 in the waters off a small cay called Cooper Island, in the jurisdiction of the British Virgin Islands, Royal Police patrolling the area by boat encountered a drug smuggling operation. The Royal Police boat then chased a high powered speed boat which eluded the police and was eventually beached by its occupants. A large shipment of cocaine was recovered near the abandoned vessel but no one was arrested. The speed boat became the subject of mandatory forfeiture under the British Virgin Islands Customs Act.

On or about December 7, 1989, co-defendant Luis M. Serrano Gutiérrez (hereinafter "Serrano") was notified by British Virgin Islands authorities that a vessel presumably owned by him called, "HOT SHOT" had been seized at Cooper Island and impounded by the Royal Virgins Islands Police for alleged drug trafficking.

The incident involving "HOT SHOT" triggered two separate insurance claims in Puerto Rico. Plaintiff insurer, El Fénix of Puerto Rico (hereinafter "El Fénix"), had issued two separate insurance policies to defendant Serrano for "HOT SHOT", the first in March, 1988 and the second in October, 1989. The claims were made by co-defendants Serrano as the alleged owner of "HOT SHOT" and First Federal Savings Bank (hereinafter "First Federal") as the

"loss payee" named under the policy. El Fénix denied coverage to both Serrano and First Federal under the second policy. Both claims were based on seizure and confiscation, an insured peril under the marine yacht policy issued by El Fénix.

El Fénix filed this action in admiralty and for declaratory judgment pursuant to Rule 57, Federal Rules of Civil Procedure and 28 U.S.C. § 2201, claiming that the policy in question was null and void in part because both co-defendants lacked insurable interests in "HOT SHOT". In addition, El Fénix claimed that one or both co-defendants had violated the principle of *uberrima fides*, or utmost good faith, which governs marine insurance contracts. According to El Fénix, the policy was voidable as a result of Serrano's misrepresentation of ownership, a material fact misrepresented at the time the policy in question was procured in October, 1989. Coverage was also denied to First Federal because it failed to notify El Fénix that Serrano was no longer the owner of "HOT SHOT" as required under a lender's "breach of warranty" clause in the policy. A separate state-court action was commenced by Serrano to enforce coverage under the terms and conditions of the policy, but the action was removed to this court by El Fénix (Civil No. 90–1583 (CCC)), and subsequently consolidated with this original action (Civil No. 90–1382 (JP)).

Plaintiff El Fénix has moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and 28 U.S.C. § 2201, requesting that the policy issued to Serrano on October 6, 1989 naming First Federal Savings Bank as loss payee be declared null and void, as a matter of law. After considering the material facts in this case presented by the respective parties in the form of depositions, sworn affidavits and supporting documents, as well as the legal arguments presented in separate memoranda filed by plaintiff El Fénix, and co-defendants Serrano and First Federal respectively, I recommend that the court enter the following:

## I.

### FINDINGS OF FACT

1. On April 6, 1988, co-defendant Luis M. Serrano Gutiérrez ("Serrano"), purchased from A & V Boats, Inc., a boat dealer in Puerto Rico, a 26′ 8″ long Carrera speed boat named "HOT SHOT", for the sum of $75,000.

2. During March or April, 1988, co-defendant First Federal Savings Bank ("First Federal"), agreed to provide Serrano financing for the purchase of "HOT SHOT". On April 6, 1988, in consideration for obtaining a loan, Serrano executed various bank documents including a promissory note for the sum of $65,000 payable on demand to the order of First Federal. For the purchase of "HOT SHOT", First Federal also required from Serrano an all-risk insurance policy on the vessel and her equipment. On or about March 29, 1988, Serrano submitted an application to plaintiff insurer El Fénix de Puerto Rico ("El Fénix"), requesting coverage for "HOT SHOT" under a marine yacht policy for hull insurance and other insured perils in the amount of $75,000. In the yacht application Serrano informed El Fénix that the loss payee to be named in the policy was First Federal.

3. On or about March 29, 1988, Policy No. Y–101643 (hereinafter the "first Serrano policy"), was issued by El Fénix to Serrano as owner of "HOT SHOT" and First Federal as loss payee under the policy. The first policy period ran for one year, from March 29, 1988 to March 29, 1989. The policy also contained various "Lender's Interest Clauses", including a clause for "Confiscation Coverage", and a "Breach of Warranty" clause.

4. Among the bank documents Serrano executed on April 6, 1988, was power of attorney conferring authority upon First Federal to subscribe on its own behalf any and all documentation necessary to document "HOT SHOT" with the United States Coast Guard. The promissory note and the power of attorney signed by Serrano also contained stipulations to the effect that First Federal would perfect and record

a first preferred mortgage upon "HOT SHOT", as security for the loan.

5. The bank documents were executed by Serrano at the offices of First Federal's attorney in Puerto Rico, who then forwarded some of those documents to Sharron Chadwick Vessel Documentation, Inc. (hereinafter "Sharron Chadwick"). Sharron Chadwick was First Federal's agent in Florida for documenting vessels with the United States Coast Guard and for recording mortgages upon vessels financed by First Federal.

6. First Federal failed to prepare, perfect or record a mortgage upon "HOT SHOT" until two years and two months after Serrano's loan was issued. A mortgage was eventually prepared and signed by the bank on July 5, 1990, during pendency of this case.

7. On May 2, 1988, less than one month after purchasing "HOT SHOT" and obtaining First Federal's loan, Serrano sold the vessel to Reinaldo Piloto Fernández (hereinafter "Piloto"), a business acquaintance in Puerto Rico. On the date Serrano sold "HOT SHOT" to Piloto, First Federal did not have a preferred mortgage recorded against said vessel. In May or June 1988, Serrano submitted various documents to First Federal evidencing the sale of "HOT SHOT" to Piloto.

8. A purchase order agreement was executed on May 2, 1988 by Serrano and Piloto whereby "HOT SHOT" was sold for a purchase price of $80,000. According to the terms of the purchase order agreement Serrano would receive $15,000 from Piloto and the remaining $65,000, corresponding to the loan balance due to First Federal on the loan, would be assumed by Piloto. However, Serrano only received $5,000 from Piloto, and agreed to take a loss on the other $10,000 of the down payment.

9. Prior to Piloto's purchase of "HOT SHOT", Serrano required from Piloto a marine yacht policy in Piloto's own name. On or about June 9, 1988, Piloto obtained a policy for "HOT SHOT" (hereinafter the "Piloto policy") from El Fénix. From May 2, 1988, the date of his purchase, Piloto made all subsequent loan payments to First Federal, and at all times maintained physical possession of "HOT SHOT". The Piloto policy, however, lapsed and expired one year later on June 9, 1989, five months before the loss of "HOT SHOT".

10. On or about October 6, 1989, more than a year after selling "HOT SHOT" to Piloto (i.e., May 2, 1988), and approximately six months after the lapse and expiration of Serrano's first policy No. Y–101643, (i.e., March 29, 1989), Serrano once again applied to El Fénix for a new marine yacht policy, No. Y–103142 (hereinafter the "second Serrano policy"). The second Serrano policy was supposed to provide coverage for the period running from October 6, 1989 to October 6, 1990. The amount of insurance for "HOT SHOT" and her equipment in the second Serrano policy was identical to the first Serrano policy including the same confiscation and breach of warranty clauses.

11. On or about October 6, 1989, when Serrano applied for and El Fénix issued the second Serrano policy, Serrano was no longer the owner of "HOT SHOT". Serrano did not have ownership or possession of "HOT SHOT" on November 13, 1989, the date of the vessel's seizure and confiscation in the British Virgin Islands.

12. Upon learning of the seizure and potential forfeiture of "HOT SHOT" in the British Virgin Islands, both Serrano and First Federal notified El Fénix of the incident and each proceeded to make their respective claims for the loss of "HOT SHOT" pursuant to the second Serrano policy's confiscation clause. After investigating all of the facts surrounding the occurrence, El Fénix denied coverage under the second Serrano policy to both Serrano and First Federal and proceeded to file the instant action for declaratory judgment.

I recommend that the court enter the following:

## II.

## CONCLUSIONS OF LAW

A. *The Standard for Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrog-

atories and admissions on file, together with the affidavits, if any, and supporting documents show that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ A factual dispute is "material" if it "affects the outcome of the litigation", and "genuine" if manifested by "substantial" evidence "going beyond the allegations of the complaint." The evidence illuminating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limits different versions of the truth which the fact finder must resolve. *Matushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989); *Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

### B. *The Insurable Interest Doctrine*

■ If an insured is not the owner of the property, he has no insurable interest and can suffer no loss. "[T]he contract is deemed to be a wagering contract and is void. "The insurable interest must be held at the time of the loss." Schoenbaum, *Admiralty and Maritime Law* § 18–6, at 569–72 (1987).

The insurable interest doctrine was created in and developed by the English Common Law. In the United States, the insurable interest doctrine appears to have been first recognized in the case law rather than in legislation. American courts have often cited English precedent that requires the existence of an insurable interest. *See, e.g., Connecticut Mut. Life Ins. Co. v. Schaefer,* 94 U.S. 457, 460–61, 24 L.Ed. 251 (1876). Great weight must be given to the English cases in the field of marine insurance. *Queens Ins. Co. of America v. Globe & Rutgers Fire Ins. Co.,* 263 U.S. 487, 492–93, 44 S.Ct. 175, 176, 68 L.Ed. 402 (1924). The insurable interest requirement applies to all types of insurance transac-

tions and is frequently employed by the courts in the United States to implement the principle of indemnity. *See Royal Ins. Co. v. Sisters of the Presentation,* 430 F.2d 759 (9th Cir.1970).

■ The burden of proving the existence of insurable interest under the policy lies with co-defendants Serrano and First Federal. *See Republic of China v. National Union Fire Ins. Co.,* 163 F.Supp. 812 (D.C.Md.1958); *see also,* Schoenbaum, *supra,* § 18–6. Serrano and First Federal have failed to present substantial, admissible evidence as required by Rule 56(e), Federal Rules of Civil Procedure, and Rule 311.12 of the Local Rules of the United States District Court for the District of Puerto Rico, to meet the burden of proving their respective insurable interests under the policy issued by El Fénix.

### C. *Co-defendant Serrano Lacks an Insurable Interest Under the Policy*

■ State law defines what constitutes legal title because contracts for the sale of a vessel are not "maritime" and admiralty jurisdiction does not apply. *S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160, 164 (5th Cir.1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980); *see also St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co.,* 666 F.2d 932, 938 (5th Cir.1982) (per curiam) (adopting district court opinion); *ITT Industrial Credit Co. v. M/V "RICHARD C",* 617 F.Supp. 761, 764–65 (D.C.La.1985) (the ownership of a vessel is not dependent on its registration); *see generally* Gilmore & Black, *The Law of Admiralty* § 1–10, at 26 n. 90 (1975).

■ The law of Puerto Rico defines what is a sales contract in article 1334 of the Puerto Rico Civil Code:

§ 3741—*Contract of Purchase and Sales Defined.*

By a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other

to pay a certain price therefor in money or in something representing the same. Title 31 L.P.R.A. § 3741.

The purchase order agreement between Serrano and Piloto dated May 2, 1988 fulfills all the requirements of a sales contract under applicable state law. Accordingly, "HOT SHOT" was sold by Serrano to Piloto on that date. Both the object and the price of the contract were agreed to and accepted. *See Reyes v. Jusino,* 116 D.P.R. 275 (1985); *Betancourt Fuster v. Secretary of Treasury,* 104 D.P.R. 174 (1975); *Prieto v. Hull Dobbs, Co.,* 88 P.R.R. 407 (1963).

■ Serrano's opposition to summary judgment, has not adequately refuted the uncontested, material fact involving the sale of "HOT SHOT" to Piloto. Therefore, Serrano has failed to prove the existence of an insurable interest as owner of the vessel pursuant to Rule 311.12 of the Local Rules of the United States District Court for the District of Puerto Rico. *Republic of China v. National Union Fire Ins. Co.,* 163 F.Supp. at 812; Schoenbaum, *supra,* at 569–72. To the contrary, in his sworn statement dated August 15, 1989, submitted by El Fénix in support of summary judgment, Serrano admits that on that date he was no longer the owner of "HOT SHOT" and that he did not have possession of the vessel since May, 1988. This affidavit is an admission of a party-opponent pursuant to Rules 801(d)(2)(A) and (B), Federal Rules of Evidence. El Fénix also presented Serrano's deposition testimony accepting the validity of the sale of "HOT SHOT" to Piloto. Rule 56(e), Federal Rules of Civil Procedure.

The validity of the sale of "HOT SHOT" is a determinant factor in assessing whether or not Serrano had an insurable interest under the policy. Clearly, Serrano's sale of "HOT SHOT" on May 2, 1988 makes the second policy No. Y–103142, null and void. In addition, on October 6, 1989, when Serrano procured the second policy from El Fénix, he made a misrepresentation of material fact which also voided the policy *ab initio* (i.e., his purported ownership of "HOT SHOT"). *See A/S Ivarans Rederei*

*v. Puerto Rico Ports Auth.,* 617 F.2d 903 (1st Cir.1980); *see also: Fireman's Fund Ins. Co. v. Wilburn Boat Co.,* 300 F.2d 631, 646 (5th Cir.1962).

Serrano's opposition to El Fénix's motion for summary judgment raises various spurious arguments, all of which are unsupported by the evidence in the record. For instance, Serrano failed to present any admissible, "substantial" evidence to support its convoluted argument that Serrano had "assigned" the first Serrano policy to Piloto—an unsupported fact which, even if true, would nevertheless be immaterial for purposes of extending coverage for the loss to Serrano under the second Serrano policy. The second Serrano policy was the only policy ostensively covering the loss which occurred on November 13, 1989. Rule 56(e), Federal Rules of Civil Procedure.

Furthermore, both Serrano's and First Federal's persistent reliance on the existence of the Piloto policy is misplaced. The Piloto policy does not create any estoppel to El Fénix's denial of coverage to co-defendants under the second Serrano policy. The Piloto policy had lapsed and expired on June 9, 1989, *five months* before the date of the loss of "HOT SHOT" by seizure in the British Virgin Islands.

In the absence of a valid insurance contract on the date of the loss, Serrano cannot raise any estoppel argument to create such a contract. *See Garcia v. Puerto Rico Aqueduct & Sewer Auth.,* 91 J.T.S. 6, 8307 (1991). Therefore, plaintiff El Fénix properly denied coverage to co-defendant Serrano based on two separate, well-settled principles of marine insurance law: (1) lack of insurable interest since Serrano was no longer the owner of "HOT SHOT" when he procured the second policy or when the loss occurred, and, (2) Serrano's misrepresentation of the material fact of ownership violated the principle of utmost good faith, *uberrima fides,* which governs marine insurance contracts, and thereby made the second Serrano policy null and void *ab initio. A/S Ivarans Rederei v. Puerto Rico Ports Auth.,* 617 F.2d at 905; *Fireman's*

*Fund Ins. Co. v. Wilburn Boat Co.*, 300 F.2d at 646.

### D. Co-defendant First Federal Lacks an Insurable Interest Under the Policy

Based on the affidavits, depositions and other supporting documents proffered by the parties, it is uncontested that First Federal did not have a valid first preferred mortgage (the "mortgage") recorded against "HOT SHOT" on November 13, 1989, when the vessel was seized in the British Virgin Islands. Rule 56(e), Federal Rules of Civil Procedure and Rule 311.12, Local Rules.

All admissible, "substantial" evidence presented for consideration of summary judgment shows that First Federal eventually prepared a preferred mortgage upon "HOT SHOT" on July 5, 1990, during the pendency of this action. The bank documents Serrano executed on April 6, 1988 to obtain First Federal's financing to purchase "HOT SHOT", show that a first preferred mortgage was never submitted to the United States Coast Guard. First Federal's purported insurable interest under the policy was supposed to be that of a mortgagee. Despite not having a valid first preferred mortgage recorded against "HOT SHOT", co-defendant First Federal answered El Fénix's complaint in this case alleging to have an insurable interest as "loss payee" under the second Serrano policy.

■ A mortgagee has a separate and distinct insurable interest from that of the owner of the vessel. A mortgagee's insurable interest is *prima facie* the valued mortgage, which First Federal admittedly did not have. The insurance of a mortgagee is not an insurance of the mortgage debt *per se,* as argued by First Federal. *See Carpenter v. Providence Washington Ins. Co.,* 41 U.S. (16 Pet.) 495, 502, 10 L.Ed. 1044 (U.S.R.I. Jan. Term 1842).

■ First Federal's alleged insurable interest as loss payee under the Second Serrano policy is also claimed as a general, unsecured creditor of Serrano. Such creditor status, without more, cannot entitle First Federal to coverage as loss payee

under the second Serrano policy. In *Banco Commercial v. Royal Exch. Assurance Corp.,* 71 F.2d 933, 934 (1st Cir.1934), the First Circuit in a similar case held that a loss payee bank, which inspite of having failed to record its mortgage upon the insured property prior to its loss by fire but claimed to have an insurable interest as a general, unsecured creditor of the insured owner, was denied coverage.

In *Banco Comercial* the plaintiff bank intervened to reform certain fire insurance policies. The policies covered merchandise stored in a warehouse at Mayagüez, Puerto Rico. A fire caused by the willful misconduct of the merchandise's insured owner destroyed the goods. The bank which financed the purchase of the merchandise failed to perfect and record a mortgage, or other security interest. The bank, as a general unsecured creditor sought to intervene against the insurer to protect its purported interest in the lost merchandise.

The First Circuit considered the plaintiff bank's argument, identical to First Federal's here, that even though it lacked a mortgagee's interest in the insured property, it was still entitled to coverage under the policies. Coverage was alleged by the bank to exist on the purported intent of the contracting parties to obviate the need for a mortgage. The First Circuit denied coverage to the creditor bank without the need to address the issue of the reformation of the policies, finding instead that the bank had in any event failed to show "any special property or insurable interest in the insured goods." *Id.* at 934.

Co-defendant First Federal's argument that it possesses an insurable interest under the second Serrano policy as a general unsecured creditor is fundamentally flawed. The subject of the insurance policy in question was not First Federal's debtor, Serrano, but rather the vessel "HOT SHOT". Serrano is still potentially liable to First Federal for the unpaid balance of the loan in his personal capacity. However, no cross-claim against Serrano was filed by co-defendant First Federal in Civil

No. 93–1382 (JP), or any counterclaim in Civil No. 90–1583 (JP).

The only subject of the second Serrano policy is therefore "HOT SHOT" and her equipment. First Federal had no proprietary or other insurable interest in "HOT SHOT" on November 13, 1989, the date of the loss. First Federal admits at page 2 of its Response to Motion for Summary Judgment, of having failed to record its mortgage upon "HOT SHOT" prior to the date of the loss. Pursuant to Rule 56(e), Federal Rules of Civil Procedure, and Rule 311.-12, Local Rules, co-defendant First Federal also failed to sustain its burden of proving the existence of an insurable interest under the second Serrano policy. *Republic of China v. National Union Fire Ins. Co.,* 163 F.Supp. at 812; Schoenbaum, *supra,* at 571.

### E. *Attorney's Fees*

■ This court has inherent power in an admiralty suit such as this to assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *F.D. Rich & Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Gradmann & Holler GmbH v. Continental Lines,* 679 F.2d 272, 273 (1st Cir.1982).

■ An examination of co-defendants' specific conduct from the time they learned of the loss of "HOT SHOT" on November 13, 1989, reveals a degree of temerity too obvious to ignore.

Defendant Serrano knew he was no longer the owner of "HOT SHOT" when he procured the second policy from El Fénix, as well as when the loss occurred. The existence of Serrano's sworn statement dated August 15, 1989 and the substance of his deposition testimony given during this litigation admitting he sold "HOT SHOT" in May, 1988, dispel any reasonable notion that he ever had a colorable claim for coverage under the second Serrano policy.

First Federal's conduct in this litigation is no less vexatious. This is evident from First Federal's lack of a valid mortgage recorded against the "HOT SHOT" at the time of the loss. First Federal knew it did not have a lien upon the subject vessel, yet this crucial fact was never disclosed to the court until plaintiff El Fénix filed copy of a mortgage dated July 5, 1990, against "HOT SHOT". The record reflects that on July 5, 1990, an initial scheduling conference was held before this court, yet no mention was ever made that a mortgage upon "HOT SHOT" was being prepared for the first time on that same date.

The lack of insurable interest by both co-defendants under such clear, uncontested circumstances justify this court's award of attorney's fees for plaintiff El Fénix. *F.D. Rich & Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. at 129, 94 S.Ct. at 2165; *Gradmann & Holler GmbH v. Continental Lines,* 679 F.2d at 273.

I recommend the following:

### III.

### CONCLUSION

It is elemental that in order to assert a valid claim for indemnification it is sufficient that the insured possess an insurable interest at the time of loss. *The John Russell,* 68 F.2d 901 (2d Cir.1934). The uncontested, material facts in this case show that both defendants Serrano and First Federal lack insurable interests under the policy they seek to enforce against El Fénix. Co-defendant Serrano did not own the vessel insured under the policy and misrepresented this material fact of ownership to El Fénix at the time he procured said policy. As a result, the policy is null and void, and El Fénix is entitled to deny coverage to Serrano.

First Federal's remote hope or "expectation of benefit" from the continued ownership of "HOT SHOT" by its original debtor Serrano, is also insufficient to constitute an insurable interest under the policy. First Federal is in no better or worse condition as a result of the forfeiture of "HOT SHOT" because Serrano had sold the boat to Piloto without a mortgage. Admittedly, the bank has recognized and acknowledged that it had no insurable interest, other than

the fact that it loaned money to Serrano for "HOT SHOT"'s purchase. Without a valid mortgage, the "basis of legal right" required for First Federal's insurable interest in the vessel simply never existed.

I recommend that judgment be entered as follows:

IT IS ORDERED AND ADJUDGED,

That in accordance with the aforementioned Findings of Fact and Conclusions of Law, this court enters summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and declaratory judgment pursuant to Rule 57, Federal Rules of Civil Procedure, and 28 U.S.C. § 2201, for plaintiff El Fénix de Puerto Rico and against co-defendants Luis M. Serrano Gutiérrez and First Federal Savings Bank. The policy issued by El Fénix, No. Y–103142, is declared null and void. Neither defendant herein is entitled to indemnification from El Fénix for the loss of "HOT SHOT", or any coverage under the voided terms and conditions of said policy. Attorneys fees are awarded.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Borden v. Secretary of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980).

At San Juan, Puerto Rico, this 9th day of September, 1991.